FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 14, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOLEEN OLSON,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>            Defendant. | No. 1:15-CV-03152-JTR<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF No. 12, 16.  Attorney D. James Tree represents Joleen Olson (Plaintiff); Special Assistant United States Attorney Jennifer A. Kenney represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 4.  After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on April 19, 2012, alleging disability since September 7, 2010, due to bipolar disorder, posttraumatic stress disorder, and asthma.  Tr. 199-206, 221, 225.  The applications were denied initially and upon reconsideration.  Tr. 120-123, 128-139.  Administrative Law Judge (ALJ) Gordon

W. Griggs held a hearing on January 27, 2014, and heard testimony from Plaintiff and vocational expert Kimberly S. Mullinax.  Tr. 40-69.  The ALJ issued an unfavorable decision on February 13, 2014.  Tr. 21-34.  The Appeals Council denied review on June 29, 2015.  Tr. 1-6.  The ALJ's February 13, 2014, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on August 28, 2015.  ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 39 years old at the alleged date of onset.  Tr. 199.  Plaintiff completed her GED in 2004.  Tr. 226.  She has worked as a bookkeeper, an insurance claims representative, a customer service representative, an office administrator, and the owner of a cleaning business.  *Id*.  Plaintiff reported she stopped working in September of 2010 because of her condition.  Tr. 225.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational

interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 13, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 7, 2010, the alleged date of onset. Tr. 23.

ORDER GRANTING DEFENDANT'S MOTION . . . . - 3

At step two, the ALJ determined Plaintiff had the following severe impairments: bipolar I disorder, asthma, and migraine headaches. Tr. 23.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24.

At step four, the ALJ assessed Plaintiff's residual functional capacity and determined she could perform a full range of work at all exertional levels with the following nonexertional limitations:

> [S]he is limited to occasional exposure to pulmonary irritants such as dust, fumes, odors, gases, pollens, airborne pollutants, and poor ventilation; she is limited to occasional exposure to extremely bright light and to very loud noise; she is limited to occasional exposure to temperature extremes; she is limited to occasional and superficial interaction with the public and with co-workers; she would not perform well as a member of a highly interactive or interdependent work group.

Tr. 25-26. The ALJ identified Plaintiff's past relevant work as bookkeeper and houseworker – general. Tr. 32. He found that Plaintiff was able to perform this past relevant work. *Id*.

In the alternative to denying the claim at step four, the ALJ proceeded to step five and determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of mail clerk, document preparer, and assembler. Tr. 33. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged date of onset, September 7, 2010, through the date of the ALJ's decision, February 13, 2014. Tr. 34.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to properly credit Plaintiff's symptoms complaints; (2) failing to properly weigh the opinion of Richard Vaughan, M.D.; (3) failing to properly weigh the opinion of Sue Gunn, M.S.; and (4) failing to include all the limitations opined by the state agency non-examining medical advisors in the residual functional capacity determination.

## DISCUSSION

### A.  Credibility

Plaintiff contests the ALJ's adverse credibility determination in this case on three fronts: (1) that the ALJ failed to understand the episodic nature of bipolar disorder; (2) that any credibility determination is erroneous under S.S.R. 16-3p; and (3) that the ALJ failed to provide legally sufficient reason for rejecting Plaintiff's testimony.  ECF No. 12 at 3-13.

### 1.  Episodic nature of bipolar disorder

Plaintiff asserts that the ALJ discredited Plaintiff's symptom testimony by misunderstanding or failing to consider the inherently episodic nature of bipolar disorder and relying on a few periods of time when Plaintiff's symptoms improved to conclude that her symptoms were not as limiting as alleged.   ECF No. 12 at 3-8.

The Ninth Circuit has held that in mental health cases, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," and it is error to rely on "a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a claimant is capable of working."  *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  In an unpublished decision, the Ninth Circuit specifically addressed bipolar disorder, stating that "[g]iven the episodic nature of bipolar disorder, short-lived improvements in functioning are consistent with the diagnosis and cannot, by themselves, constitute substantial evidence to override treating source opinions that Buck was significantly impaired."  *Buck v. Colvin*, No. 12-35032, 540 Fed. Appx.

772, 773 (9th Cir. October 2, 2013).

The above Ninth Circuit holdings must be reconciled with the circuit's deference to the ALJ's interpretation of the evidence: if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097.

Here, the ALJ specifically points to Dr. Vaughn's reports from August 2010, October 2010, January 2011, February 2011, October 2011, June 2012, and July 2012, and counseling records from June 2012, July 2012, March 2013, and May 2013 to show improvement with treatment and medications and that when symptoms were increased, the increase was associated with increased stress in Plaintiff's life. Tr. 27-28. Plaintiff argues that these are cherry picked records and reading the records between these dates shows the cyclical nature of Plaintiff's symptoms. ECF No. 12 at 4-5.

A review of the record as a whole supports the ALJ's determination. Plaintiff specifically argues that the records surrounding August 23, 2010, a treatment date the ALJ cited to support his conclusion that Plaintiff's impairments improved with treatment and medications, show the cyclical nature of Plaintiff's impairment. ECF No. 12 at 4-5. The August 16, 2010, appointment was Plaintiff's first appointment with Dr. Vaughan and she reported being suicidal. Tr. 323-324. Dr. Vaughan prescribed Zoloft. Tr. 323. By August 23, 2010, Dr. Vaughan found Plaintiff to be smiling and more engaging and only noted a flat affect. Tr. 321. On October 20, 2011, Plaintiff reported taking her medications, but was experiencing increased stress living with her mother. Tr. 319. Dr. Vaughan found that Plaintiff was not anxious, did not have flight of ideas, was not suicidal, and had a flat affect. *Id*. Despite Plaintiff's assertions, this supports the ALJ's conclusions that Plaintiff's mental health impairments improved with medication and occasional exacerbations were due to situational stressors and that despite Plaintiff's reports of exacerbated symptoms the objective evidence

remained the same after Plaintiff was started on medication.

Next, Plaintiff argues that the ALJ did not accurately reflect the records discussed in his determination.  ECF No. 12 at 5-8.  However, reviewing the records shows that when Plaintiff took her medication as prescribed, while her reports to Dr. Vaughan varied, the objective evidence relatively remains the same. *See* Tr. 317-318 (September 8, 2010 – normal affect, negative for anhedonia, and not anxious); Tr. 315 (January 13, 2011 – normal affect, negative for anhedonia, not anxious, not euphoric, no flight of ideas, pressured speech, and no suicidal ideation); Tr. 313-314 (February 17, 2011 – normal affect, negative for anhedonia, not anxious, not euphoric, no flight of ideas, no pressured speech); Tr. 303-304 (September 30, 2011 – off medications due to a failure to attend appointments. She was agitated, anxious, irritable, and had pressured speech); Tr. 305-306 (October 20, 2011 – off medications due to suicidal thoughts.  She had flight of ideas, poor insight, and poor judgement); Tr. 298-299 (November 2, 2011 – restarted medications and had flat affect, not agitated, not anxious, not euphoric, no flight of ideas, and no pressured speech); Tr. 295-296 (March 1, 2012 – only taking half the prescribed does of Risperdal and had depressed affect and positive for anhedonia); Tr. 292-293 (June 8, 2012 – negative for anhedonia, not agitated, not anxious, not euphoric, no flight of ideas, no pressured speech, demonstrated appropriate mood and affect, and good eye contact and psychomotor).

The Court acknowledges that the impairment of bipolar disorder is episodic in nature, however, substantial evidence supports the ALJ's conclusion that when Plaintiff was medicated these episodes did not occur at the severity alleged by Plaintiff.  Therefore, the ALJ did not error.

## 2.    S.S.R. 16-3p

Plaintiff argues that any rejection of her symptoms based on "credibility" is erroneous under S.S.R. 16-3p.  ECF No. 12 at 8-9.

On March 16, 2016, S.S.R.16-3p "Evaluation of Symptoms in Disability

Claims" became effective, eliminating the term "credibility" from the Social Security Administration's policy, and clarifying "adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." Instead, the "adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id*. In doing so, the Commissioner noted that ALJs had been following previous sub-regulatory policy that had contained the term "credibility":

> We are rescinding SSR 96-7p: Policy Interpretation Ruling Titles II and XVI Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements and replacing it with this Ruling. We solicited a study and recommendations from the Administrative Conference of the United States (ACUS) on the topic of symptom evaluation. Based on ACUS's recommendations and our adjudicative experience, we are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.

S.S.R. 16-3p.

First, Social Security Rulings issued by the Commissioner do not have the force of law, however reviewing courts will give them some deference because they represent the Commissioner's interpretation of agency regulations. *See* 20 C.F.R. § 402.35(b)(1); *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001). Therefore, Plaintiff's argument that the ALJ's reasons for rejecting her testimony violates S.S.R. 16-3p and, therefore, violates regulatory authority is an incomplete argument. Plaintiff fails to point to a single regulation that the ALJ violated.

Second, S.S.R. 16-3p does not state that S.S.R. 96-7p and the use of the term "credibility" per se violated regulatory authority.  Instead, the purpose of the ruling was to "clarify that subjective symptom evaluation [was] not an examination of an individual's character," and instead is an evaluation of the intensity and persistence of reported symptoms to determine how those symptoms limit a claimant's ability to perform work-related activities.  S.S.R. 16-3p.

Here, the ALJ did not assess Plaintiff's overall character or truthfulness in the manner typically used during an adversarial court litigation.  Instead, he applied the test originally set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), and then he evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functioning and he found that Plaintiff's statements regarding intensity, persistence, and limiting effects of her symptoms to be unreliable.  Tr. 26.

"The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).  Once a claimant meets the *Cotton* test and there is no affirmative evidence suggesting the claimant is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms for specific, clear and convincing reasons.  *Id*. at 1284. The *Cotton* test and the ALJ's ability to reject a claimant's testimony regarding the severity of her symptoms is represented in S.S.R. 16-3p: "adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and *given the adjudicator's evaluation of the individual's symptoms*, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities."  (Emphasis added.)

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

Unlike S.S.R. 16-3p, and S.S.R. 96-7p prior to March 16, 2016, the *Cotton* test and the ALJ's ability to reject Plaintiff's testimony regarding her symptoms under the aforementioned cases has the force of law in this circuit and must be followed by this Court.  Therefore, Plaintiff's argument that any rejection of her testimony based on credibility is *per se* error is not accepted.

### 3.    Specific, clear and convincing reasons

Plaintiff asserts that the ALJ's reasons for finding Plaintiff less than fully credible regarding the persistence, severity, and limiting effects of her symptoms are not supported by the evidence of record.  ECF No. 12 at 8-13.

As discussed above, absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff was less than fully credible concerning the intensity, persistence, and limiting effects of her symptoms.  Tr. 26.  The ALJ reasoned that Plaintiff was less than fully credible because (1) medical records show her asthma symptoms are well controlled with medication, (2) she failed to quit smoking even with asthma, (3) she told a provider she was able to function and ignore her reported severe headaches, (4) her reported symptoms were inconsistent with her reported activities of caring for family members, dating, and attending group therapy, and (5) her testimony at the hearing was inconsistent with what she told providers at appointments.  Tr. 26-27, 29-30.

Plaintiff only challenges the ALJ's determinations regarding her dating, her attending group therapy, and her testimony at the hearing as reasons for finding Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of her symptoms.  ECF No. 12 at 9-13.  Therefore, the Court need not

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

address the remaining unchallenged reasons provided by the ALJ. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief).

The ALJ's determination that Plaintiff's robust dating history was inconsistent with her reported symptoms of social anxiety is a legally sufficient reason to find Plaintiff less than fully credible regarding her symptom statements. A claimant's daily activities may support an adverse credibility finding if the claimant's activities contradict her other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). In November of 2010, she first reported she was not dating and then reported that she was actually seeing two individuals. Tr. 346. In April of 2012, Plaintiff reported beginning to date a man she knew when she was 14. Tr. 374. In October 2012, Plaintiff reported meeting a new boyfriend and discussed a conflict with him. Tr. 585, 588. In April of 2013, Plaintiff discussed the number of people she had slept with in a draft of her book. Tr. 663. In May of 2013, Plaintiff reported reconnecting with an old boyfriend. Tr. 657. The ALJ's determination that Plaintiff was actively dating multiple individuals throughout the relevant time period is supported by substantial evidence. His determination that this was inconsistent with Plaintiff's reported symptoms of social anxiety is a legally sufficient reason to reject Plaintiff's symptom reports.

The ALJ's determination that Plaintiff's ability to attend group therapy and participate without decompensation was inconsistent with Plaintiff's reported social anxiety is a legally sufficient reason to reject Plaintiff's symptom statements. The records show that she was so involved in therapy and willing to discuss her own issues, that she often had to be reminded to return to the relevance of the group and instructed to reduce her social interaction with group members. Tr. 359, 487, 491, 517. There is no evidence that Plaintiff's social anxiety

interfered with her ability to cooperate with group therapy. Therefore, the ALJ's determination is supported by substantial evidence and is a legally sufficient reason for rejecting Plaintiff's symptom reports.

The ALJ's fifth reason for rejecting Plaintiff's symptom reports, that her testimony at the hearing was inconsistent with what she told providers at appointments, is a legally sufficient reason. The ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. The record shows that Plaintiff discussed vocational rehabilitation (DVR) services with her counselor multiple times. Tr. 610, 616, 628. Despite this, at the hearing, Plaintiff stated it had been mentioned to her several times, but did not know what it was. Tr. 51. Plaintiff's counselor stated that she was unsure she used the term DVR with her in sessions with Plaintiff and that Plaintiff did not retain that name. Tr. 724. Additionally, in 2013, Plaintiff took a vacation/trip that resulted in missing treatment. Tr. 672, 681. When asked about this vacation at her hearing, Plaintiff stated that she had never been on vacation. Tr. 52. She then stated that she went to Alabama to pick up her daughter. *Id*. When asked how she got there, she stated she drove. *Id*. Then, she stated she flew down there, but drove back. *Id*. After the hearing, Plaintiff's counselor stated that she only used the work "trip" to reference that Plaintiff would be missing sessions and she did not know where she was going, but acknowledged that she knew Plaintiff traveled to Everett, WA, during her treatment. Tr. 724. Considering the inconsistencies in Plaintiff's statements between the treatment records and the hearing, this is a legally sufficient reasons for the ALJ to determine that Plaintiff's symptom reports may be unreliable.

As such, the ALJ did not error in his determination that Plaintiff's statements regarding persistence, intensity and limiting effects of her symptoms where less than fully credible.

**B.      Opinion of Richard Vaughan, M.D.**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by treating physician Dr. Vaughan.  ECF No. 12 at 13-15.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) non-examining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at 631.

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the treating physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct."  *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

On September 30, 2011, Dr. Vaughan completed a Documentation Request Medical or Disability Condition for the Washington State Department of Social and Health Services (DSHS).  Tr. 283-285.  Dr. Vaughn stated that Plaintiff's bipolar disease limited Plaintiff's ability to work by limiting her interaction with others.  Tr. 283.  When asked if Plaintiff should be limited to a specific number of hours of work per week, Dr. Vaughan stated "none."  *Id*.  He also opined that if

Plaintiff were treated and stayed on her meds she would not be limited in her ability to participate in activities related to preparing for and looking for work such as attending educational or vocational classes. *Id*. When asked if Plaintiff's condition impacted her ability to access services, such as using the telephone, receiving treatment, making and keeping appointments, using transportation services, or finding locations of services, Dr. Vaughan responded with "Yes" and underlined "making and keeping appointments" and stated "if off meds." Tr. 384. He also stated that he expected Plaintiff's condition to limit her ability to work, look for work, or train for work for six months. *Id*.

The ALJ gave Dr. Vaughan's opinion "little weight" because (1) there was no evidence attached to the opinion, (2) the opinion appeared to be based upon Plaintiff's self-reports, (3) Dr. Vaughan indicated Plaintiff's exacerbation of psychological symptoms was related to a failure to take medication as prescribed, and (4) the opinion is inconsistent with the overall record. Tr. 30-31.

The ALJ's first reason for rejecting Dr. Vaughan's opinion, that there was no evidence attached to the opinion, is not legally sufficient. The Ninth Circuit has held that an opinion expressed in a check-off list that lacks substantive medical findings to support the conclusion may be rejected. *Batson*, 359 F.3d at 1195. However, if the opinion expressed in a check-off list is based on significant experience with the claimant and supported by numerous records, it is entitled to weight that an otherwise unsupported and unexplained check-off list would not merit. *Garrison*, 759 F.3d at 1013. Here, Dr. Vaughan had treated Plaintiff since August 16, 2010, including seven appointments prior to the September 30, 2011, opinion. Tr. 309-310, 313-324. Considering the experience Dr. Vaughan had in treating Plaintiff's mental health impairments, the fact that these records were not attached to the DSHS form containing his opinion is not a legally sufficient reason to reject his opinion. However, any resulting error from this reason is harmless error, as the ALJ provided other legally sufficient reasons for rejecting Dr.

Vaughan's opinion and gave greater weight to the opinions of state agency medical advisors, which this Court finds was without error. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The ALJ's second reason for rejecting Dr. Vaughan's opinion, that it appeared to be based upon Plaintiff's self-reports, is not legally sufficient. An ALJ may discount the opinions of a treating provider because they were based "to a large extent" on the claimant's reports of symptoms, which the ALJ found not reliable; however, the ALJ must provide a basis for his determination that the treating provider's opinion was based "to a large extent" on the claimant's symptom reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ failed to provide a basis for his finding that Dr. Vaughan's opinion was based largely on Plaintiff's symptom reports. Tr. 30-31. Therefore, this reason is legally insufficient to reject Dr. Vaughan's opinions. However, any error resulting from this reason is harmless because, as discussed below, the ALJ provided a third legally sufficient reason to reject Ms. Gunn's opinions. *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The ALJ's third reason for rejecting Dr. Vaughan's opinion, that he indicated Plaintiff's exacerbation of psychological symptoms was related to a failure to take medication as prescribed, is legally sufficient. As discussed above, the treatment records from Dr. Vaughan support the conclusion that Plaintiff's symptoms were exacerbated when she failed to take her medication. Additionally, Dr. Vaughan's opinion itself supports the conclusion that Plaintiff's symptoms increase in severity when off medication: Plaintiff would not have any limitations to preparing and looking for work if treated and staying on her medications, Tr. 283, and that Plaintiff has difficulty in making and keeping appointments if off her medications, Tr. 284. Considering the determination that Plaintiff's symptoms are

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

reduced with medication and treatment and Dr. Vaughan's opinion was only to last for six months, it is reasonable to assume that these impairments would not last the required twelve months.  Therefore, this is a specific and legitimate reason to reject the opinion.  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disability for purposes of determining eligibility).

The ALJ's fourth reason for rejecting Dr. Vaughan's opinion, that it is inconsistent with the overall record, is legally sufficient.  The ALJ determined that Plaintiff's ability to date, take trips, attend group therapy and participate without decompensating, and provide in home health care for her aunt were all inconsistent with Ms. Gunn's opinions.  Tr. 31.  As discussed above, these activities are supported by substantial evidence.  Therefore, the ALJ's determination that these activities are inconsistent with Dr. Vaughan's opinions constitutes a specific and legitimate reason for rejecting the opinions.

## C.    Opinion of Sue Gunn, M.S.

Plaintiff argues the ALJ failed to properly consider and weigh the opinion expressed by treating counselor, Sue Gunn, M.S.  ECF No. 12 at 15-18.

Unlike Dr. Vaughan, Ms. Gunn is not an acceptable medical source; instead, she is considered an "other source."  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  Generally, the ALJ should give more weight to the opinion of an acceptable medical source than to the opinion of an "other source," such as a therapist.  20 C.F.R. §§ 404.1513(d), 416.913(d).  An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. §§ 404.1513(d), 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232.  An ALJ must give reasons that are specific and germane to each "other source" to discount their opinions.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053-1054 (9th Cir. 2006).

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

On March 22, 2012, Ms. Gunn completed a Documentation Request for Medical or Disability Condition form for DSHS. Tr. 286-288. She identified Plaintiff's conditions as bipolar I disorder, obsessive compulsive disorder, and borderline personality disorder. Tr. 286. She limited Plaintiff to ten hours of work activity and ten hours of activities related to preparing for and looking for work per week due to psychological impairments. *Id*. Ms. Gunn opined that Plaintiff's impairment did not affect her ability to seek treatment. Tr. 287. She stated that she would expect Plaintiff's condition to limit her ability to work, look for work, or train to work as discussed above for twelve months. *Id*.

On January 4, 2013, Ms. Gun completed a Mental Residual Functional Capacity Assessment (MRFCA). Tr. 528-530. She opined that Plaintiff had a severe[1] limitation in the abilities to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 529. She opined that Plaintiff had a marked[2] limitation in the abilities to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to make simple work-related decisions, to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond appropriately to changes in

---

[1] A severe limitation is defined as the "[i]nability to perform one or more basic work-related activities." Tr. 528.

[2] A marked limitation is defined as a "[v]ery significant interference with basic work-related activities i.e., unable to perform the described mental activity for more the 33% of the work day." Tr. 328.

the work setting.  Tr. 328-329.  Additionally, she opined that Plaintiff had a moderate[3] limitation in the abilities to understand and remember detailed instructions, to carry out detailed instructions, to ask simple questions or request assistance, and to set realistic goals or make plans independently of others.  Tr. 528-530.

On October 2, 2013, Ms. Gunn completed a second MRFCA.  Tr. 531-534. She opined that Plaintiff had a marked limitation in the abilities to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  Tr. 531-532.  She opined that Plaintiff had a moderate limitation in the abilities to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others.[4]  Tr. 532, 534.  In addition to the twenty mental functional limitations

_____

[3]A moderate limitation is defined as a "[s]ignificant interference with basic work-related activities, i.e., unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day."  Tr. 328.

[4]The definitions of marked and moderate limitations are the same as the January 4, 2013, MRFCA.  Tr. 531.

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

address in the MRFCA, Ms. Gunn also stated that Plaintiff had marked difficulties in maintaining social functioning and in maintaining concentration, persistence or pace in reference to the 12.00 Listings "B" Criteria.[5]  Tr. 533.  She opined Plaintiff would likely be off-task for 21-30% and she would likely miss four or more days per month if attempting to work a 40-hour work week.  *Id*.  Ms. Gunn stated that Plaintiff was being treated by a treatment team, the above opinion was the opinion of the treatment team, and there was at least one M.D. or Ph.D. on the treatment team.  *Id*.

The ALJ gave Ms. Gunn's opinions "little weight" because (1) the opinions were largely based on Plaintiff subjective complaints, and (2) the opinions were inconsistent with the overall record, including Ms. Gunn's own treatment notes.  Tr. 31.

The ALJ's first reason for rejecting Ms. Gunn's opinion is not legally sufficient.  As discussed above, an ALJ may discount the opinions of a treating provider because they were based "to a large extent" on the claimant's reports of symptoms, which the ALJ found not credible; however, the ALJ must provide a basis for his determination that the treating provider's opinion was based "to a large extent" on the claimant's symptom reports.  *Ghanim*, 763 F.3d at 1162. Here, the ALJ failed to provide a basis for his finding that Ms. Gunn's opinions were based largely on Plaintiff's symptom reports.  Tr. 31.  Therefore, this reason is legally insufficient to reject Ms. Gunn's opinions.  However, any error resulting from this reason is harmless because, as discussed below, the ALJ provided a second legally sufficient reason to reject Ms. Gunn's opinions.  *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . .

---

[5]Plaintiff argues that this opinion shows Plaintiff met a listing.  ECF No. 12 at 16.  However, establishing the "B" Criteria alone in insufficient to meet any of the 12.00 listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

ORDER GRANTING DEFENDANT'S MOTION . . . - 19

error was inconsequential to the ultimate nondisability determination").

The ALJ's second reason for rejecting Ms. Gunn's opinion, that the opinion was inconsistent with the overall record, is legally sufficient. The ALJ determined that Plaintiff's ability to date, take trips, attend group therapy and participate without decompensating, and provide in home health care for her aunt were all inconsistent with Ms. Gunn's opinions. Tr. 31. As discussed above, these activities are supported by substantial evidence. Therefore, the ALJ's determination that these activities are inconsistent with Ms. Gunn's opinions constitutes a germane reason for rejecting the opinions.

**D.    Opinions of state agency non-examining medical advisors**

Plaintiff argues the ALJ erred when he failed to account for all of the limitations opined by the state agency non-examining medical advisors in the final residual functional capacity determination. ECF No. 12 at 18-19.

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a residual functional capacity, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

Here, two state agency non-examining medical advisors, Cynthia Collingwood, Ph.D., in August 2012 and Kent Reade, Ph.D., in October 2012, reviewed the evidence available at the time of their reviews and completed MRFCA forms as part of the Disability Determination Explanations; they opined that Plaintiff was moderately limited in the abilities to maintain attention and concentration for extended periods, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or

peers without distracting them or exhibiting behavioral extremes.  Tr. 89, 115-116.
Each medical advisor provided a narrative form of these limitations, stating that
claimant was capable of simple repetitive tasks and appeared capable of complex
tasks as well; however, due to her psychological symptoms, her ability to sustain
concentration for extended periods may be compromised at times.  Tr. 89, 115.
Additionally, the medical advisors opined in narrative form that claimant would
work best when limited to superficial interactions with the general public and co-
workers and she would benefit from an understanding and consistent supervisor.
Tr. 89, 116.

The ALJ gave "greater weight" to these opinions, but stated that "for the
reasons discussed above, the claimant is better accommodated with the above
residual functional capacity."  Tr. 32.  The residual functional capacity
determination by the ALJ only includes the psychological limitations of occasional
and superficial interaction with the public and with co-workers and not performing
well as a member of a highly interactive or interdependent work group.  Tr. 25-26.
Plaintiff argues that the ALJ erred by not including the moderate limitation in
maintaining concentration, persistence or pace and the finding that she would
benefit from an understanding and consistent supervisor in the residual functional
capacity determination.  ECF No. 12 at 18.

First, the term moderate is undefined on the forms completed by the medical
advisors.  Tr. 89, 115-116.  Furthermore, the Program Operations Manual System[6]

_____

[6]The POMS does not impose judicially enforceable duties on the Court or
the ALJ, but it may be "entitled to respect" under *Skidmore v. Swift & Co.*, 323
U.S. 134 (1944), to the extent it provides a persuasive interpretation of an
ambiguous regulation.  *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587–88, 120
S.Ct. 1655, 146 L.Ed.2d 621 (2000); *Lockwood v. Comm'r Soc. Sec. Admin.*, 616
F.3d 1068, 1073 (9th Cir. 2010).  Here, the issue is not determining the meaning of

ORDER GRANTING DEFENDANT'S MOTION . . . - 21

(POMS) DI 24510.060 details Social Security's Operating Policy as to the MRFCA forms complete by psychological consultant.  *See* POMS DI 24501.002 (equating the MRFCA form on the Disability Determination Explanations to SSA-4734-F4-SUP addressed by POMS DI 24510.060).   According to POMS DI 24510.060, the section of the form that includes mental function items with limitations ranging from "not significantly limited" to "markedly limited," "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the [residual functional capacity] assessment."  POMS DI 24510.060.  Instead, the actual mental residual functional capacity assessment is recorded in narrative form, explaining the conclusions indicated in prior section, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.  *Id*.  Therefore, the opined MRFCA was not the moderate limitation in the ability to maintain attention and concentration for extended periods, but the narrative section.  Tr. 89, 116.  As such, the ALJ was not required to include the undefined moderate limitation in his residual functional capacity determination.

      Plaintiff alleges that the opinion she would benefit from an understanding and consistent supervisor is equivalent to the need for special supervision, which is not included in the residual functional capacity assessment.  ECF No. 12 at 18-19.  However, a need for an understanding and consistent supervisor could reflect a need for special supervision, difficulty in the ability to adjust to changes in the

_____

an ambiguous regulation, but instead understanding how to correctly read a form produced and distributed by the Social Security Administration to its Medical Consultants.  Therefore, by relying on the POMS provision in this case, the Court is not allowing the provision to set a judicially enforceable duty on the ALJ, but only using it as a guide to define the parameters of a Medical Consultant's opinion on an agency supplied form.

ORDER GRANTING DEFENDANT'S MOTION . . . - 22

workplace, difficulty sustaining concentration, or difficulty interacting with the public, coworkers, and supervisors. Dr. Collingwood and Dr. Kent stated that Plaintiff was not significantly limited in her ability to sustain an ordinary routine without special supervision. Tr. 89, 115. Therefore, the evidence does not support Plaintiff's assertion. Both doctors did note limitations in the abilities to maintain attention and concentration and interact with the general public, coworkers, and supervisors. Tr., 89, 115-116. Therefore, the evidence supports the ALJ's conclusion reflected in the residual functional capacity assessment that Plaintiff had difficulty working with the general public, coworkers, and as part of a highly interactive or interdependent work group. Tr. 25-26; *See Andrews*, 53 F.3d at 1039 (the ALJ is responsible for resolving ambiguities); *see also Tackett*, 180 F.3d at 1097 (if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ). Therefore, the ALJ did not error in his residual functional capacity determination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1.     Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED September 14, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 23